UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON VUE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:20-cv-01179-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 12).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

**I.　ANALYSIS**

**A.　Whether the ALJ Improperly Rejected Plaintiff's Subjective Complaints**

Plaintiff first argues that "[t]he ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's allegations of mental dysfunction." (ECF No. 19, p. 6). The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

As an initial matter, because there is affirmative evidence showing that Plaintiff was malingering, the ALJ did not have to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) ("The only time [the clear-and-convincing] standard does not apply is when there is affirmative evidence that the claimant is malingering."). Here, the ALJ noted that two psychologists acting as consultative examiners, Doctors Lance Portnoff and James Murphy, administered tests concluding that Plaintiff deliberately failed to make any effort on the testing material. (A.R. 18-19).

Specifically, in May 2016, Dr. Portnoff noted that Plaintiff "appear[ed] to be exaggerating cognitive deficits" in response to testing. (A.R. 19). And because Plaintiff made a "non-credible effort" with testing, the findings were "considered to be an invalid representation of his actual current cognitive status." (*Id.* at 22). As one example, although Plaintiff reported that he could "do fourth grade math, long division, and algebra," at his examination, he alleged that he could not "subtract 75 from 100, or to add 4 + 4 blankets." *Id.* at 22-23. Dr. Portnoff concluded that Plaintiff's "test performance [was] inconsistent with the record and completely lacking in credibility." (*Id.* at 23).

Similarly, after testing Plaintiff in March 2019, Dr. Murphy concluded that Plaintiff did "not make a honest attempt to answer the questions." (*Id.*). For example, Plaintiff could not

"name the seasons of the year or the number of months in a year, with his attitude towards the psychologist and the evaluation described as 'less than cooperative.'" (*Id.*). Further, Plaintiff stated that "he did not understand the test instructions but was able to complete the sample procedures without difficulty; but then chose the wrong answer each time." (*Id.*). Dr. Murphy concluded that Plaintiff was "'malingering because he [did] not meet the minimum criteria for autism disorder,' or any Axis I mental health diagnosis other than 'malingering.'" (*Id.*).

Moreover, despite not having to do so, the ALJ provided clear and convincing reasons for concluding that, while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (A.R. 21). As for inconsistencies between Plaintiff's statements and the medical evidence, the ALJ noted that Plaintiff reported that he was "terrified of other people" and "endorsed suicidal ideation and visual and auditory hallucinations." (*Id.*).

However, "medical examinations generally showed the claimant was casually dressed and groomed, had no abnormal movements, displayed fair eye contact, had an intact receptive language comprehension, and an appropriate thought content with no hallucinations or suicidal ideation. (*Id.* at 24). Additionally, "he was alert and oriented, and had an adequate judgment, and an intact immediate memory; he could recall two out of three items after a delay, and remembered autobiographical information"; he had a within normal limits concentration; he could count backwards from twenty without errors, he demonstrated understanding of what was asked of him, he spoke two languages fluently, and his memory results did not support his intelligence scores." (*Id.*). Here, such inconsistencies provided a sufficient basis to discount Plaintiff's subjective symptom testimony. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (concluding that ALJ provided "specific, clear, and convincing reasons supporting a finding that [the claimant's] limitations were not as severe as he claimed" by citing to inconsistencies between claimant's testimony and the medical record, among other record evidence).

Moreover, the ALJ noted that Plaintiff's testing results with Doctors Portnoff and Murphy derived from Plaintiff not "mak[ing] an honest attempt to answer the questions, ha[ving] a less than adequate behavior, and [] not speak[ing] or attempt[ing] to respond to inquiries." (*Id.* at 24). On this point, Plaintiff cites a November 2011 evaluation by Dr. Howard Glidden that attributed Plaintiff's failure to respond to questions as "suggesting limits of self-confidence and self-esteem rather than noncompliance." (ECF No. 19, p. 6) (citing A.R. 400). However, even if this assessment from 2011 were similar enough to the evaluations in 2016 and 2019 by Doctors Portnoff and Murphy to prove useful for comparison purposes, this Court is required to "uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). Here, the ALJ's determination that the record evidence showed that Plaintiff was not fully participating in medical examinations is a rational interpretation of the record that this Court upholds.

As for inconsistencies between Plaintiff's statement and other record evidence, the ALJ observed that Plaintiff's education records contradicted Plaintiff's allegations about the severity of his symptoms:

> Education records showed that in the eighth grade, the claimant's reading and math were at a 4th grade level; however, they did not identify scores in any of these areas as "basic," "below basic," or "far below basic" and the claimant achieved grades ranging primarily from A+ to B, with only one C and one C+ during 7th and 8th grade (B22E/4; B9F/4-5). However, the education records also reported that the claimant completed his homework, and his classwork. In addition, he was proficient in Science and was in advanced English and Math. Further, he was able to communicate his needs effectively in the classroom, was receptive and cooperative when given simple directions from teachers and staff, was compliant, teachable, learned quickly in a small group setting, and was able to take care of his own needs. The education records also showed that the claimant failed the tenth grade due to excessive absences, rather than due to a mental impairment (B22E/6; B9F/4-5, 29-30).

(*Id.* at 22). And, to a lesser extent, the ALJ also relied on the lack of evidence to support Plaintiff's characterization of his symptoms, citing his "minimal and entirely conservative [mental health treatment], with little evidence of ongoing mental health treatment and minimal

4

signs to support ongoing functional impairment." (*Id.* at 24).

Plaintiff argues that he was only able to "maintain[] such academic progress because of accommodation he received through special education" and that his lack of mental health treatment is not a sufficient basis to discount his subjective-symptom testimony. (ECF No. 19, p. 9-10). However, as before, the pertinent framework is whether the ALJ's determination is subject to rational determination. *Andrews*, 53 F.3d at 1039-40. Here, although Plaintiff's academic progress was likely attributable, in part, to accommodation through special education, it was also rational for the ALJ to conclude that some of the progress was attributed to Plaintiff's abilities. Similarly, although "conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms" if "the claimant has a good reason for not seeking more aggressive treatment," *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019), the Ninth Circuit has generally "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment," *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, Plaintiff did not provide any developed explanation as to his conservative treatment history, and it was legitimate for the ALJ to rely on that history as one of several reasons for discounting Plaintiff's subjective-symptom testimony.

**B. Whether the ALJ Committed Error Regarding Plaintiff's Treating Physician's Opinion**

Plaintiff argues that the ALJ committed legal error in failing to provide specific and legitimate reasons for discounting the opinion of Plaintiff's treating psychologist, Dr. Mark Popper. The Ninth Circuit has held the following regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6).
>
> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial

evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[1] Here Dr. Popper's opinion was contradicted by the opinions of Doctors Portnoff and Murphy. (A.R. 27 ("Given the numerous statements of other psychologists documenting the claimant's poor effort, I cannot give[] credit to the claimant's presentation or report of limitation as described by Dr. Popper.")). The ALJ assigned great weight to the opinions of Doctors Portnoff and Murphy, who both concluded that the Plaintiff's test results were an invalid representation of his ability because he failed to make any effort in testing. (*Id.* at 25-26).

Accordingly, the Court reviews the ALJ's decision to see if the ALJ provided specific and legitimate reasons that are supported by substantial evidence for the lack of weight given to Dr. Popper's opinion. In this case, the ALJ ultimately assigned Dr. Popper's opinion no weight, giving, in part, the following reasons for this conclusion:

> The evidence of record documents the claimant attended an initial evaluation with Dr. Mark D. Popper, Ph.D. on February 22, 2019 with medical records submitted April 24, 2019 reflecting progress notes of visits only on March 15, 2019 and March 29, 2019 (B20F). Completing a Mental Questionnaire on March 21, 2019, Dr. Popper described having weekly contact with the claimant since February 14, 2019, the date the claimant's limitations "began" (B15F). Dr. Popper opined that the claimant would be precluded from performance fifteen percent or more in an eight-hour workday in all areas of understanding and memory, sustained

---

[1] For applications filed on or after March 27, 2017, 20 C.F.R. § 404.920c applies in considering medical opinions; notably, no deference or specific evidentiary weight is given to medical opinions. Plaintiff indicates that he believes that this provision applies because he filed his application after this date. (ECF No. 19, p. 12-13). However, as Defendant points out, because Plaintiff was previously eligible for benefits, a new claim is considered filed as of date of the redetermination of Plaintiff's continuing eligibility, which occurred in 2016 upon Plaintiff turning 18. (*See* ECF No. 20, p. 23, n.9) (citing Program Operations Manual System (POMS) DI 24503.050.D.8, available at https://secure.ssa.gov/poms.nSf/lnx/0424503050. Thus, because the application would be deemed filed in 2016, the standard announced in 20 C.F.R. § 404.1527, which applies to claims filed before March 27, 2017, applies in considering the weight given to Plaintiff's treating physician's opinion.

> concentration and memory, social interaction, and adaptation, and would be absent from work five days or more because of his mental impairments and/or treatment, and unable to complete an 8-hour workday five days or more because of his mental impairments and/or treatment (B15F; B20F). I give this opinion no weight. Although Dr. Popper describes the claimant as having reduced intellectual function, per observation, his assessment is otherwise unsupported by any contemporaneous analysis or citation to clinical findings and appears in large part based on the claimant's self-reports, his mother's reports, and minimal testing.
>
> Medical records submitted at exhibit B20F do not reflect weekly therapy visits between February 14, 2019 and March 21, 2019, and Dr. Popper's April 24, 2019 summary primarily repeats the claimant's subjective complaints, as well as those of his mother, that are inconsistent with the evidence as a whole (B20F). Given the numerous statements of other psychologists documenting the claimant's poor effort, I cannot give[] credit to the claimant's presentation or report of limitation as described by Dr. Popper. The aforementioned findings are not consistent with such extreme limitations and this opinion is therefore not consistent with the medical record in general.

(A.R. 27).

Plaintiff contends that Dr. Popper's description of Plaintiff's demeanor during his assessment "constituted contemporaneous findings that supported his assessment of mental limitations" and that "such findings were consistent with evidence of Plaintiff's anxious presentation during other psychological examinations." (ECF No. 19, p. 14). Moreover, Plaintiff states that Dr. Popper's reliance on Plaintiff's and his mother's statements in the evaluation "does not detract from Dr. Popper's opinions." (*Id.* at 15). In opposition, the Commissioner cites to portions of the record in arguing that the ALJ offered specific and legitimate reasons to assign Dr. Popper's opinion no weight. (*See* ECF No. 20, pp. 23-25). In reviewing the parties' arguments, the Court concludes that the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, for assigning Dr. Popper's opinion no weight.

First, the ALJ noted that the medical records did not reflect Dr. Popper's s own treatment records indicating weekly contact since February 14, 2019. (A.R. 27). Rather the records showed an initial evaluation on February 22, 2019, with later visits occurring on March 15, 2019, and March 29, 2019. (*Id.*). It was proper for the ALJ to consider this relatively short treatment relationship in assessing Dr. Popper's opinion. *See* 20 C.F.R. § 416.927(c)(2)(i) (noting that medical opinions are evaluated, in part, based on the "[l]ength of the treatment relationship and the frequency of examination" with generally more weight being assigned the longer a treating

source has treated a claimant and the more times the treating source has seen the claimant").

Second, the ALJ concluded that Dr. Popper's assessment of Plaintiff as having intellectual limitations was not adequately supported "by any contemporaneous analysis or citation to clinical findings" and seemed to be based largely on Plaintiff's self-reports, his mothers' reports, and minimal testing. (A.R. 27). Plaintiff counters that Dr. Popper's notations of Plaintiff's demeanor as being anxious, shaky, and reserved (among other observations) constituted contemporaneous evidence for Plaintiff's limitations. (ECF No. 19, p. 14).

It is true, as the ALJ noted, that Dr. Popper describes the claimant as having "reduced intellectual function, per observation." (A.R. 27). Nevertheless, this observation does not negate the ALJ's conclusion that Dr. Popper's observations were insufficient to support Dr. Popper's opinion, in part, due to the lack of "any contemporaneous analysis or citation to clinical findings." (*Id.*). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Similarly, the ALJ did not reject Dr. Popper's opinion only because it appeared to derive from the reports of Plaintiff and his mother. Rather, the ALJ properly considered the subjective reporting of Plaintiff's limitations, among several other reasons in the record, for rejecting Dr. Popper's findings. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.1999)).

Third, the ALJ concluded that Dr. Popper's finding of "extreme limitations" could not be credited after considering the "other psychologists documenting the claimant's poor effort" in testing. (A.R. 27). Plaintiff's efforts to impede accurate testing of his limitations supports the ALJ's conclusion that Dr. Popper's opinion should be given no weight. *See Thomas*, 278 F.3d at 959 (concluding that ALJ properly found that claimant was not credible regarding her limitations based, in part, on her failure to "give maximum or consistent effort during two physical capacity evaluations).

Accordingly, the Court concludes that the ALJ provided specific and legitimate reasons,

supported by substantial evidence, for assigning no weight to Dr. Popper's opinion.

## II.     CONCLUSION AND ORDER

In light of the foregoing, the Court finds that the decision of the Commissioner of Social Security is adequately supported, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **August 4, 2021**                              /s/ Erica P. Grosjean
                                                                   UNITED STATES MAGISTRATE JUDGE